KERN, ADMINISTRATRIX, RESPONDENT, v. PAYNE, DIRECTOR-
GENERAL OF RAILROADS, APPELLANT.

(No. 4,932.)

(Submitted November 23, 1922. Decided December 18, 1922.)

[211 Pac. 767.]

*Personal Injuries—Master and Servant—Railroads—Statutory
Negligence—Safety Appliance Act—Proximate Cause—Evi-
dence—Insufficiency — Presumptions — Rules — Violation by
Plaintiff—Effect.*

Personal Injuries—Negligence—Proximate Cause—Burden of Proof.
    1. The plaintiff in a personal injury action must prove, not only
that the defendant was guilty of negligence, but that such negligence
was the proximate cause of his injury.

Same—Statutory Negligence—Proximate Cause—Railroads—Safety Ap-
pliance Act.
    2. The rule that even in those cases in which violation by the
master of a statutory duty is a sufficient showing of negligence, the
negligence complained of must have been the proximate cause of the
injury to entitle plaintiff to recover, applies to causes arising out
of a violation of the Safety Appliance Act.

Same—Railroads — Safety Appliances—Proximate Cause—Evidence—In-
sufficiency.
    3. In an action by a railroad brakeman brought under the federal
Employers' Liability and Safety Appliance Acts for injuries sus-
tained by reason of a defective coupler, evidence *held* insufficient to
show that the coupler was the proximate cause of the injury.

Same—Evidence—Inferences Based upon Presumption Insufficient.
    4. An inference cannot be drawn from a presumption but must be
founded upon a fact legally established; hence one presumption can-
not be based upon another presumption.

Same—Trainman—Violation of Rules Bars Recovery.
    5. A railroad brakeman who is injured in operating a coupler in a
manner prohibited by the rules of the company of which he was
familiar cannot recover damages for the injury.

*Appeals from District Court, Custer County; S. D. Mc-
Kinnon, Judge.*

---

3. Construction of federal Safety Appliance Act in reference to
keeping couplers in repair, see notes in 14 **Ann. Cas.** 239; **Ann. Cas.**
1913A, 949.

Constitutionality, application and effect of federal employers' act,
see notes in 47 **L. R. A.** (n. s.) 38; 48 **L. R. A.** (n. s.) 987; **L. R. A.**
1915C, 47.

4. One presumption cannot be based upon another presumption,
see notes in 5 **A. L. R.** 1340; 10 **Ann. Cas.** 1096.

[65 Mont. 325.]

ACTION by Lottie I. Kern, as administratrix of the estate of Henry L. Kern, deceased, against John B. Payne, Director-General of Railroads, as agent under the Transportation Act of February 28, 1920 (41 Stat. 456). From the judgment for plaintiff and from an order denying a new trial, the defendant appeals. Reversed and remanded, with directions to dismiss complaint.

*Messrs. Murphy & Whitlock* and *Mr. George W. Farr*, for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

There is perhaps no rule involved in the law of negligence better established in Montana than the rule with reference to proximate cause. The burden of establishing it is upon the plaintiff, and if his evidence leaves the case to conjecture or guess or is such that the injury may be attributed with equal propriety to causes other than the one alleged, then the plaintiff has failed. The doctrine was first clearly announced in the case of *Shaw* v. *New Year Gold Mining Co.*, 31 Mont. 138, 77 Pac. 515. (See, also, *Wallace* v. *Chicago, Mil. & St. P. Ry. Co.*, 48 Mont. 427, 138 Pac. 499; *Scheytt* v. *Gallatin Valley Ry. Co.*, 54 Mont. 565, 172 Pac. 321; *Howard* v. *Flathead Ind. Tel. Co.*, 49 Mont. 197, 141 Pac. 153; *Andree* v. *Anaconda C. M. Co.*, 47 Mont. 554, 133 Pac. 1090; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)

As this case involves the application and construction of a federal statute, to-wit, the Safety Appliance Act, the decisions of the supreme court of the United States thereon are controlling. (See *St. Louis etc. R. R.* v. *Conarty*, 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep. 785 [see, also, Rose's U. S. Notes]; *Louisville & N. R. R.* v. *Layton*, 243 U. S. 617, 61 L. Ed. 931, 37 Sup. Ct. Rep. 456; *Lang* v. *New York Central*, 255 U. S. 455, 65 L. Ed. 465, 40 Sup. Ct. Rep. 381; *McCalmont* v. *Pennsylvania Co.*, 273 Fed. 231.)

Violation by deceased of defendant's rule bars recovery. (*Great Northern Ry. Co.* v. *Wiles*, 240 U. S. 444, 60 L. Ed.

[65 Mont. 325.]

732, 36 Sup. Ct. Rep. 406 [see, also, Rose's U. S. Notes];
*Virginia etc. Ry. Co.* v. *Hill,* 119 Va. 837, 89 S. E. 895.) The
rule in question was a reasonable one and it was clearly vio-
lated. Plaintiff cannot contend that there was evidence of
any custom of habitual violation which amounted to the abroga-
tion of the rule. (*St. Louis etc. Ry. Co.* v. *Steel,* 119 Ark.
349, 178 S. W. 320.)

*Mr. Sharpless Walker,* for Respondent, submitted a brief;
*Mr. F. M. Miner* and *Mr. George C. Stiles,* of the Bar of Min-
neapolis, Minnesota, of Counsel; *Mr. Miner* argued the cause
orally.

The cases of *Great Northern Ry. Co.* v. *Wiles,* 240 U. S.
444, 60 L. Ed. 736, 36 Sup. Ct. Rep. 406, *St. Louis etc. R. R.*
v. *Conarty,* 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep.
785, *Louisville & N. R. R.* v. *Layton,* 243 U. S. 617, 61 L. Ed.
931, 37 Sup. Ct. Rep. 456, and *Lang* v. *New York Central,*
255 U. S. 45, 65 L. Ed. 465, 41 Sup. Ct. Rep. 381, cited by
appellant, do not support its contentions.

The following cases decided by the supreme court of the
United States involving the Safety Appliance Acts in our
opinion set forth the principle that ought to govern and control
in the disposition of this case: *Chicago, R. I. & P. Ry. Co.* v.
*Brown,* 229 U. S. 317, 57 L. Ed. 1204, 33 Sup. Ct. Rep. 840
[see, also, Rose's U. S. Notes]; *Otos* v. *Great Northern Ry.
Co.,* 128 Minn. 283, 150 N. W. 922; *Great Northern Ry. Co.*
v. *Otos,* 239 U. S. 349, 60 L. Ed. 322, 36 Sup. Ct. Rep. 124;
*Popplar* v. *Minneapolis St. P. etc. R. Co.,* 121 Minn. 413,
Ann. Cas. 1914D, 383, 141 N. W. 798; *Minneapolis etc. Ry.
Co.* v. *Popplar,* 237 U. S. 369, 59 L. Ed. 1000, 35 Sup. Ct.
Rep. 609; *Spokane & I. E. R. Co.* v. *Campbell,* 241 U. S.
497, 60 L. Ed. 1125, 36 Sup. Ct. Rep. 683; *Atlantic City
R. R. Co.* v. *Parker,* 242 U. S. 56, 61 L. Ed. 650, 37 Sup. Ct.
Rep. 69; *Gotschall* v. *Minneapolis & St. L. Co.,* 130 Minn. 33,
153 N. W. 120; s. c., 244 U. S. 66, 61 L. Ed. 995, 37 Sup. Ct.
Rep. 598; *San Antonio etc. R. R. Co.* v. *Wagner,* 241 U. S. 476,
60 L. Ed. 1110, 36 Sup. Ct. Rep. 626.

Defendant seeks to make much of the fact that there was a rule of the defendant forbidding employees from going in front of moving cars, and he cites to the attention of the court several cases which were undoubtedly correctly decided in view of the facts involved in each of those cases. He also objects to the evidence admitted by the trial court as to a custom among train operatives to go in front of moving cars under certain circumstances and particularly such as confronted plaintiff's intestate in the instant case. With respect to this we desire to remark that the question of the violation of the rule would only go to the question of contributory negligence on the part of plaintiff's intestate, and was the particular question involved in the cases which defendant cites to the attention of the court, but it would have no bearing in the instant case, because it is founded upon the federal Employers' Liability Act, which expressly takes away from the master the defenses of contributory negligence and assumption of risk in every case where a violation by the employer of the Safety Appliance Acts is the proximate cause of injury to the employee.

MR. COMMISSIONER FORD prepared the opinion for the court.

This action is brought by the administratrix of the estate of Henry L. Kern, deceased, to recover for his death, which occurred at Roundup, Montana, in January, 1920, basing her action upon the federal Employers' Liability Act of April 22, 1908, 35 Stats. at Large, 65, Chapter 149 (8 Fed. Stats. Ann., p. 1208, *etc.;* U. S. Comp. Stats., secs. 8657–8665), and the Safety Appliance Acts of March 2, 1893, 27 Stats. at Large, 531, Chapter 196, March 2, 1903; 32 Stats. at Large, 943, Chapter 976, and April 14, 1910, 36 Stats. at Large, 298, Chapter 160 (8 Fed. Stats. Ann., p. 1189, *etc.;* U. S. Comp. Stats., secs. 8605–8623).

The complaint alleges that at said time the Chicago, Milwaukee & St. Paul Railway Company was under federal control, and that the defendant, Payne, was at the time of bringing the action Director-General of Railroads and the designated

agent against whom actions should be brought to enforce liability arising out of and occurring during federal control; that it was the duty of the defendant under what is commonly known as the Safety Appliance Act to refrain from using or moving over the line of railroad in question any car not properly equipped with a coupler which would couple automatically by impact and uncouple without the necessity of men going between ends of the cars; that the deceased was at the time employed by the defendant upon the system known as the Chicago, Milwaukee & St. Paul Railway, and was a member of a train crew engaged in operating a freight train from Melstone, Montana, to Harlowton, Montana, and that said train was carrying goods moving in interstate commerce; that in violation of the Safety Appliance Act there was one car in said train, the coupler of which was defective and was in such condition that it was impossible, by the use of the lever thereon, to open the knuckle thereof; that while the said Kern' and other members of the crew were engaged in switching operations at Roundup, it became necessary to couple another car on to the end of said car, at which the defective coupler was located, and that the said Kern was engaged about the work of making the coupling, and that, because of the fact that the coupler on said car was defective, he stepped in front of the car, which was approaching said car, and which was to be coupled on to it, for the purpose of opening the knuckle on the moving car, so that the same would properly couple; that at said time the said Kern was on the opposite side of the car from that upon which the lever from which the coupler could· be operated was located, and that he went in front of the moving car and opened the knuckle, and in attempting to get out in some manner came in contact with a switch-frog, and was thrown upon the track in such a way that the moving car ran over and crushed his foot; that infection developed in the injured limb, and so progressed that the decedent died on the twenty-fifth day of January, 1920.

The defendant in his answer admits the operation of the railroad in question by the defendant, and admits the duty of

[65 Mont. 325.]

the defendant, as prescribed by the Safety Appliance Act, but denies that there was any violation of the Act, or that any car with a defective coupler was moved by the defendant; admits the employment of Henry L. Kern as a brakeman, and admits also that the train upon which he was working contained cars of merchandise moving between states, and admits that the said Kern was engaged in switching operations, and that it was his duty, among others, to assist in coupling certain cars; admits that he sustained the injury to his foot in which an infection developed, and that he thereafter died, but denies that there was any necessity for his going between the cars; and denies all of the allegations of negligence contained in the complaint. The defendant also alleges affirmatively that the injury relied upon occurred in consequence of the ordinary risk of the work in which he was engaged, and that such risk was assumed by him. The defendant also pleads affirmatively contributory negligence on the part of the deceased, and also that the injury arose solely from the carelessness and negligence of the deceased.

The reply denies the affirmative allegations in the answer.

At the close of all the testimony a motion was made by the defendant for a directed verdict, which was denied. The plaintiff had judgment and verdict for $18,000. The defendant has appealed from the judgment and from an order denying a new trial.

The defendant assigns eleven errors, but in argument groups them under four specific heads, one only of which we deem it necessary to consider as decisive of this case, *viz.:* Is the evidence sufficient to support the verdict? In that respect the defendant contends that the particular in which the evidence is insufficient is that it does not show that the defective condition of the coupler was the proximate cause of plaintiff's injury.

In this state, as well as in every state of the Union, and [1] in all the United States courts, the plaintiff, in a personal injury case, must prove by competent evidence, not only that the defendant was guilty of negligence, but that such neg-

ligence was the proximate cause of his injury. This doctrine is very clearly announced in the case of *Stones* v. *Chicago, M. & St. P. Ry. Co.*, 59 Mont. 342, 197 Pac. 252, where the rule is stated as follows: "It is elementary that in order to make out a case of this character it must be made to appear from the complaint and the *evidence* (1) that the defendant was negligent; (2) that plaintiff was injured; and (3) that the negligence charged was the proximate cause of the injury. In other words the *causal* connection between the negligence alleged and the injury suffered must appear affirmatively. (*Glover* v. *Chicago, M. & St. P. Ry. Co.*, 54 Mont. 446, 171 Pac. 278; *Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673.) The question always is: Was the negligence *causa sine que non*—a cause which had it not existed, the injury would not have occurred (*Hayes* v. *Michigan C. R. Co.*, 111 U. S. 228, 28 L. Ed. 410, 4 Sup. Ct. Rep. 369 [see, also, Rose's U. S. Notes]), for the master may be held liable only when to his lapse of duty is directly attributable the injury to the servant, as any given effect is to be assigned to its efficient cause (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243)."

In the earlier case of *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515, the doctrine was also announced in the following language: "Thus, in an ordinary case of negligence, like the one under consideration, plaintiff has the burden of proving the negligence of defendant as alleged, and also that such negligence was the proximate cause of plaintiff's injury. If the testimony leaves either the existence of negligence of defendant, or that such negligence was the proximate cause of the injury, to conjecture, it is insufficient to establish plaintiff's case. If the conclusion to be reached from the testimony is equally consonant with some theory inconsistent with either of the issues to be proven, it does not tend to prove them, within the meaning of the rule above announced. The use of the word 'tend' does not contemplate conjecture."

Negligence in certain cases may be presumed, and in the [2] case of statutory negligence the violation of the statute

is a sufficient showing of negligence, but in those cases the negligence must be shown to be the proximate cause of the injury. This court has decided that question in the case of *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243, which was a case in which the negligence alleged was the violation of a statute with reference to the guarding of cages in a mine, and Mr. Chief Justice Brantly, speaking for the court, said: ''Whether the violation of such a statute is properly designated as negligence or not, the master is responsible for his failure to obse've it. But it does not follow that he may be held to respond in  mages for an injury not shown to have been the proximate resu. of his disobedience. As in cases where the rule of ordinary care applies, the plaintiff must prove, not only the injury, but also that it was proximately caused by the negligence alleged (*Pierce* v. *Great Falls & Canada Ry. Co.*, 22 Mont. 445, 56 Pac. 867; *Shaw* v. *New Year Gold Min. Co., supra;* 1 Thompson on Negligence, sec. 45; 2 Labatt on Master and Servant, sec. 803), so in cases where it is sought to hold the master for nonperformance of a statutory duty the evidence must tend directly to show that the fault was the cause of the injury. And, as Mr. Labatt observes: 'The nonexistence of a legal connection between the negligence and the injury is predicable whenever, for aught that appears, the accident might have happened even if the defects in question had not existed, or if the precautions which were omitted had been taken. The master cannot be held liable if his negligence was merely a condition as opposed to the efficient cause of the injury.' (Vol. 2, sec. 803.) The burden is always upon the plaintiff in such cases to show the causal relation between the negligence and the injury. The efficient cause may be shown by indirect evidence, but even in a civil case a theory cannot be said to be established by such evidence, unless the circumstances are such, not only that they furnish support for the particular theory, but also tend to exclude any other reasonable theory. (*Shaw* v. *New Year Gold Min. Co., supra.*)''

The same doctrine applies to causes arising out of a violation of the Safety Appliance Act. (*Lang* v. *New York Central R. Co.,* 255 U. S. 455, 65 L. Ed. 729, 41 Sup. Ct. Rep. 381; *St. Louis & S. F. R. R. Co.* v. *Conarty,* 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep. 785; *Great Northern Ry. Co.* v. *Wiles,* 240 U. S. 444, 60 L. Ed. 732, 36 Sup. Ct. Rep. 406; Thornton's Federal Employers' Liability Act and Safety Appliance Acts, 3d ed., par. 307, p. 469.) Mr. Thornton, in his work on the Safety Appliance Act, *supra,* says: "In order to enable an employee to recover when he has been injured by a car not properly equipped with automatic couplers, such improper equipment or the absence of an automatic coupler must have been the proximate cause of his injury, and he has the burden to show that such was the fact."

The doctrine is held in some cases that a breach of statutory duty is evidence, not only of negligence, but also that such negligence caused the injury complained of. But this rule has been abandoned, and the modern rule is that, while the violation of a statute is negligence, yet to entitle the plaintiff seeking to recover damages for an injury sustained, he must show a causal connection between the injury received and a disregard of the statutory prohibition or mandate and that the injury was the proximate result. (22 R. C. L., sec. 91, p. 206.)

The evidence introduced in this case on behalf of the plaintiff, in so far as it relates to the accident, is as follows: [3] The train upon which the decedent was serving as a brakeman reached Roundup at 11:30 on the day of the accident; it was a local freight train, and it stopped at Roundup to cut out some cars and put some in; the caboose, with a number of cars attached, was left on the main-line track, and thereafter Kern, as head brakeman, and other employees, were engaged in switching operations; the train was proceeding in a westerly direction; immediately prior to the injury the caboose, with the cars attached, was upon the main track, the westerly end of the standing cars being approximately two car-lengths from the switch leading on to what is known as the Y track;

part of the crew, consisting of the enginemen, Kern and one other brakeman, had pulled three cars from the Y track on to the main track for the purpose of coupling the cars in question on to the end of the standing train; the most easterly car of the three that were attached to the engine and the one farthest from the engine, was a Hart convertible car, and was the car that ran over and injured Kern; at that time the knuckle of the coupler upon the west end of the standing cars was closed, and prior to the injury Moss, another brakeman of the train crew, had tried to open the knuckle for the purpose of leaving it in position so that cars could be coupled on to the standing car, but he found that the knuckle would not open, and in that connection Moss, after explaining the manner in which a knuckle was opened, testified: "In trying to open this knuckle and jerking on it with my right hand, the lever in my left hand, it refused to open, and knowing that we were going to move this string of cars and to save myself a walk and to place myself into a position where I could assist them in any other work, I got hold of this lever and gave it a yank and tried to get it open with my hand, and I couldn't get it open, so with that I left that * * * at the time I was making this effort to open this knuckle, the engine with three cars coupled to it were pulling out of this other—this Y track * * * After they passed over the switch and came to a stop, the next move was to shove them against our train; the three cars and the engine had pulled down the main line down to about five or six cars to make a clearance down there. * * * In order that two cars can couple when they are brought into contact with each other, one or the other couplers have to be open. One of them must be open. It is sometimes necessary to have both knuckles open in order to make a coupling. Just before I made the effort to open the knuckle of this coupler as I have told the jury about, Mr. Kern was giving a stop signal to the engineer and in the act of throwing the switch. At the time I saw him giving the stop sign the engine and three cars attached to it were pulling out here. * * * In response to that signal the engine and three cars were

[65 Mont. 325.]
brought to a stop. After that was done, Mr. Kern dropped off
the side and run around the points for the main-line track
and gave a back-up sign. This effort of mine to open the
knuckle, as I have described, was before he gave the back-up
sign. After I made this effort to open this knuckle and it
would not open, I started to walk in an easterly direction.
When I next became conscious of Mr. Kern was when I heard
him holler."

At some time during the switching operations at Roundup,
other cars had been coupled on to the car having the defective
coupler, and Kern was the man who was "pulling the pin"
in the various cuts that were made. In that connection, wit-
ness Moss testified: "At the time this car on which I made
the effort to open the coupler, as I have told the jury, was
placed on the main line where it was standing at the time I
made the effort, it was then in contact with other cars to the
west of it; it was when it was first placed there. Nobody
pulled the pin in that coupler on the car from the west at that
time; somebody pulled the pin on the car that came in con-
tact with it on the west; that was Kern."

On cross-examination Moss testified: "I wouldn't say I took
care of the uncoupling when we took off our caboose or not,
but I believe I did. If I did take care of that operation I did
it by taking hold of the pin lifter and pulling on it, on the
caboose—in front of the caboose and back of the car west of
it. As to whether when I cut a train I usually pull the pins
on the cut that is going away from the standing part and
leaving that open, I will say it is owing to which side of the
train you are standing on. The cars are so constructed that
there is a lever for the purpose of lifting the pin which
fastens the knuckles or knuckle to the car, one on one side and
one on the other. * * * As to whether you understood me
to say that Mr. Kern had opened the knuckle on some other
car, and whether I referred to some car other than the car
that injured him, * * * I will say a string of cars had
been kicked upon the main line; this last batch of cars that
came down the main line he would have to pull the pin on

[65 Mont. 325.]

another car in making this cut of cars if he let them run down, he didn't pull the pin at the westerly end of the cars on the main line. I don't have any recollection now of that particular operation; I have recollection of cars coming down there, and when I approached the end of the car it was closed where it was customary for it to be open. As to whether in the operation there as I have described it to the jury, I am not speaking of having seen that particular operation, but just conclude that that was a fact; I will say, well, with my trying to operate that knuckle it was. When I testified that Kern cut off that car, I do not have any recollection now of him having cut off that car. As to whether I know from anything I observed but am drawing ·a deduction from what I saw afterward, I will say it was the condition of the way things were. I know in fact that the particular car which was the head end or the west end of our train at the time it was standing there had shortly before that been coupled to a car in front of it. I know from a conversation that went on with Kern and I going to the hospital. I saw that particular car coupled to another car. As to whether at the time I am testifying to, that Mr. Kern cut off that car from the other, I am deducing that fact from the condition and not from observation of his doing that, I will say I am stating the facts to the jury exactly as I know them. Asked to tell how I could see Kern cutting off that car at that time, I will say I saw him in the act of cutting it off, but I never saw him cut the car off."

As the moving car approached the standing car and when about two car-lengths from it, the engineer observed Kern go in front of the moving car, and shortly thereafter he observed Kern rolling out from in front of the moving car, and upon going to him found his foot had been crushed, and indications being that it had been caught in the frog of the switch. The train at the time was moving at the rate of two or three miles per hour. Immediately after Kern was injured the coupler on the moving car was observed to be open. It is undisputed that in order that two cars may couple when brought in con-

tact one of the two couplers must be open, but both need not be open.

There was no evidence introduced as to whether or not the coupler on the moving car was open or closed prior to the injury, nor was there any evidence introduced that Kern had previously uncoupled from this particular car or that he operated the coupler alleged to be defective. The evidence of the defendant was to the effect that the knuckle on the standing car was not defective, but operated perfectly immediately after the injury. From the above evidence it could only be assumed that Kern knew the coupler was defective on the standing car from the fact that he ''pulled the pin'' in the switching operations that day; yet it would further have to be presumed that he pulled the pin on this particular car, in order to impute knowledge of its defective condition to him; yet there was no necessity for him to go between the cars, unless the coupler on the moving car was closed, and that fact also would have to be presumed, as there is no evidence, direct or indirect, upon that point.

To sustain plaintiff's position, therefore, it must be inferred that the coupler on the moving car was closed, and then upon that inference it must be inferred that he went in between the cars to open the closed coupler, both of which inferences must be preceded by the presumption that he knew the coupler on the standing car was defective and would not [4] operate. One presumption cannot be based upon another presumption. (16 Cyc. 1050; *Looney* v. *Railway Co.,* 200 U. S. 480, 50 L. Ed. 564–569, 26 Sup. Ct. Rep. 303 [see, also, Rose's U. S. Notes].) The inference cannot be drawn from a presumption, but must be founded upon some fact legally established. (5 A. L. R. 1340.)

The proof of the plaintiff shows only that the coupler was defective, that during the switching operations that day Kern ''pulled the pin'' in the cars, and that he was injured. From these facts everything else to establish plaintiff's case must be inferred. We therefore conclude that the evidence is wholly insufficient to establish one element of plaintiff's case, *viz.,*

that the defective coupler was the proximate cause of the decedent's injury.

The uncontradicted evidence on behalf of the defendant shows [5] that there was a rule of the defendant company which provides: ''Employees must not remove any of the appliances on engines or cars that will endanger the safety of themselves and others, and are warned not to stand on top of high cars while passing under bridges or through tunnels, not to get on the end of an engine or on a car as it approaches them, *go between moving cars to couple,* uncouple, open, close or arrange knuckles of couplers or to work on side of cars or trains where there are buildings, sheds, cattle chutes or other projections, or follow dangerous practices; kicking or holding drawbar in position to couple with other car or cars approaching is prohibited.'' The deceased was familiar with this rule, and his duty under it was to have stopped the train before going in to open the coupler on the car, or, as the witness Moss testified: ''By giving the engineer a stop sign and step around to the other side of the car, open the pin lifter lever, and step across from the opposite side of the track.'' Had the decedent done so, he would not have been injured.

We can see no distinction in principle in this case from the case of *Great Northern Ry. Co.* v. *Wiles, supra.* In that case the deceased was a rear brakeman upon a freight train, and was killed when a passenger train ran into the rear end of the freight train, which had become parted. It was his duty, under the rules of the company, to protect the rear of his train by going back and giving warning to the approaching passenger, which he knew was behind him. Instead of going back and discharging his duty, he remained in the caboose and was killed. The negligence relied upon was the pulling of the drawbar which caused the freight train to stop. In its opinion the court says: ''There is no justification for a comparison of negligences or the apportioning of their effect. The pulling out of the drawbar produced a condition which demanded an instant performance of duty by Wiles, a duty not only to himself but to others. The rules of the company

[65 Mont. 325.]

were devised for such condition and provided for its emergency. Wiles knew them, and he was prompted to the performance of the duty they enjoined (the circumstances would seem to have needed no prompting) by signals from the engineer when the train stopped. He disregarded both. His fate gives pause to blame, but we cannot help pointing out that the tragedy of the collision might have been appalling. He brought death to himself and to the conductor of his train. * * * In the present case there is nothing to extenuate Wile's negligence; there was nothing to confuse his judgment or cause hesitation. His duty was as clear as its performance was easy. He knew the danger of the situation and that it was imminent; to avert it he had only to descend from his train, run back a short distance, and give the signals that the rules directed.'' (See, also, *McCalmont* v. *Pennsylvania Co.* (D. C.), 273 Fed. 231; *Id.* (C. C. A.), 283 Fed. 736; *Virginia & S. W. Ry. Co.* v. *Hill,* 119 Va. 837, 89 S. E. 895.)

In *Francis* v. *Kansas City etc. Ry. Co.,* 110 Mo. 387, 19 S. W. 935, it is said: ''It should be most unreasonable and unjust, after imposing upon the master the duty of promulgating a rule for securing the safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound, at his peril to make the rules the servant should be equally bound at his peril to obey them. In such case the disaster is brought upon the servant by his own voluntary act, and he, and not the master who has discharged his duty, should bear the consequences. So it has been uniformly ruled.''

If it were assumed, in this case, that the decedent knew of the defective knuckle, and knew that the knuckle on the moving car was closed, we then have a situation where the deceased, knowing all of the circumstances, and with no necessity requiring him so to do, and with ample time and space in which to act, willfully and deliberately violates a rule of the company governing his conduct, and by his own carelessness and negligence brings about his own injury.

We recommend that the judgment and order be reversed and the cause remanded to the district court of Custer county, with directions to dismiss the complaint.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order are reversed and the cause is remanded to the district court of Custer county, with directions to dismiss the complaint.

*Reversed.*