FISHER, RESPONDENT, *v.* BUTTE ELECTRIC RAILWAY
CO. ET AL., APPELLANTS.

(No. 5,637.)

(Submitted February 20, 1925. Decided March 21, 1925.)

[235 Pac. 330.]

*Personal Injuries — Street Railways — Negligence on Part of
Motorman—Evidence—Insufficiency—Burden of Proof — In-
ferences—Presumptions.*

Personal Injuries—Occurring of Accident not Presumption of Neg-
ligence.
1.   The mere fact that plaintiff while lying on defendant com-
pany's street-car tracks in the night-time was run over by one of
its cars did not raise any presumption of negligence on the part of
the motorman for failing to keep a proper lookout, the presumption
on the contrary being that he discharged his duty in that respect.

Same—Negligence—Burden of Proof—Proximate Cause.
2.   To justify recovery in a personal injury action plaintiff has
the burden of proving not only that defendant was negligent but
that such negligence was the proximate cause of the injury, proof
of each of these elements being indispensable.

Same—Evidence must be Substantial—Conjectures Insufficient.
3.   To sustain recovery of damages for personal injuries the evi-
dence relied upon, whether direct or indirect, must be substantial
—more than a mere scintilla—and a verdict based upon conjecture,
however shrewd, or upon suspicion, however well grounded, cannot
stand.

Same—Street Railways—Failure of Motorman to Keep Lookout—Evi-
dence—Insufficiency.
4.   Evidence of plaintiff *held* insufficient to show that defendant
motorman's alleged negligence in failing to keep a proper lookout
when his car ran over him while lying on the track was the
proximate cause of the injury, it failing to show that he was
in a position of danger where he could be seen from the ap-
proaching car and that he occupied that position for a sufficient
length of time before the car reached him to permit the car to
be stopped and the injury averted after the motorman could have
discovered his position of peril by the exercise of reasonable care.

Same—Negligence—Inferences.
5.   While actionable negligence may be established by indirect
evidence,—*i. e.*, by inferences and presumptions deducible from
facts, one inference cannot be drawn from another inference or
presumption, and a presumption cannot rest upon an inference.

Same—Negligence—When Indirect Evidence Insufficient.
6.   Where actionable negligence is attempted to be proved by in-
direct evidence, the circumstances must not only tend to prove
the efficient proximate cause relied upon but must tend equally
to exclude any other; in other words, if the evidence furnishes
the basis for two equally permissible conclusions, one of which

[72 Mont. 594.]

speaks negligence on the part of defendant while the other points to a different efficient proximate cause, the case fails for want of sufficient evidence.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by Paul Fisher against the Butte Electric Railway Company and another. Judgment for plaintiff and defendants appeal. Reversed and remanded.

*Mr. J. L. Templeman, Mr. Sydney Sanner* and *Mr. Fred J. Furman,* for Appellants, submitted a brief; *Mr. Furman* argued the cause orally.

The jury, in Montana, decides questions of fact when there is conflict in the testimony or when reasonable men may fairly reach more than one conclusion, but when proof is silent, jurors cannot substitute their speculations and return verdicts based upon their conjectures. The plaintiff must prove his cause of action. The steps of proof are simple. He must show (1) negligence; (2) that it was a proximate cause of his injury, and (3) damage. The difficulty of showing any step does not remove or alter the duty or shift the burden of proof. This rule of proof has no exception and has been enforced from the beginning.

The *prima facie* presumption that a defendant has discharged its duty to plaintiff must be overcome by proof of neglect upon defendants' part. (*Kelly* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633.) In an ordinary case of negligence the burden of proof is upon plaintiff to show by competent evidence the negligence of the defendant as alleged, and also that such negligence was the proximate cause of the plaintiff's injury. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.)

In order to support a judgment there must be substantial evidence of every fact necessary to a recovery. Mere conjecture or speculation are not sufficient. (*Tudor* v. *Northern Pac. Ry. Co.,* 45 Mont. 456, 124 Pac. 276.) Plaintiff must prove

every material allegation of his complaint which is put in issue. (*Killeen* v. *Barnes-King Dev. Co.*, 46 Mont. 212, 127 Pac. 89.)

The mere fact of accident was insufficient to raise a presumption of defendant's negligence. (*Gleason* v. *Missouri River Power Co.*, 46 Mont. 395, 128 Pac. 586; *Stones* v. *Chicago, M. & St. P. Ry. Co.*, 59 Mont. 342, 197 Pac. 252; *Melzner* v. *Chicago, M. & St. P. Ry. Co.*, 51 Mont. 487, 153 Pac. 1019.)

Proof that decedent met his death by being struck by a street-car does not place the burden upon the street railroad company to show that it was not guilty of negligence, for every person is bound to exercise his intelligence to avoid dangers and to recover plaintiff must show that decedent was in the exercise of due care and the street railway company was negligent. (*Osterholm* v. *Butte Elec. Ry. Co.*, 60 Mont. 193, 199 Pac. 252.) The efficient cause of an injury may be shown by indirect evidence, but not unless the circumstances are such that they not only tend to affirmatively show such, but also tend to exclude any other, cause. (*Wallace* v. *Chicago, M. & St. P. Ry. Co.*, 48 Mont. 427, 138 Pac. 499.)

If the evidence suggests different fashions in which the accident might have occurred, and some of the different fashions are outside of any negligence upon the part of the defendants, the verdict will not be allowed to stand. (*Olson* v. *Montana, Ore Purchasing Co.*, 35 Mont. 400, 89 Pac. 731.) Speculative and conjectural inferences are not permissible. (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)

Unless the evidence furnishes substantial support for the cause of action alleged the plaintiff has failed to make out his case. The evidence must show the negligence alleged and the causal connection between it and the injury. (*Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706.) Where the evidence is barren of facts tending to support the charge of negligence a judgment will not be allowed to stand. (*Reino* v. *Montana, M. L. Dev. Co.*, 38 Mont.

291, 99 Pac. 853.)   There must be a showing that defendants
failed to use reasonable care.   The mere fact of injury alone
is not sufficient.   (*Masich* v. *American Smelting & R. Co.*, 44
Mont. 36, 118 Pac. 764; *Tudor* v. *Northern Pac. Ry. Co.*, 45
Mont. 456, 124 Pac. 276; *Gleason* v. *Missouri River Power Co.*,
46 Mont. 395, 128 Pac. 586; *Jonosky* v. *Northern Pac. Ry.
Co.*, 57 Mont. 63, 187 Pac. 1014; *George* v. *Northern Pac.
Ry. Co.*, 59 Mont. 162, 196 Pac. 869.; *Neilson* v. *Missoula
Creamery Co.*, 59 Mont. 270, 196 Pac. 357; *Page* v. *New York
R. Co.*, 59 Mont. 305, 196 Pac. 871; *Markarites* v. *Chicago,
M. & St. P. Ry. Co.*, 59 Mont. 493, 197 Pac. 743.)

We urge that plaintiff's case does not meet the test of these
fundamental principles.   The utmost that can be said for
plaintiff is that he was injured.   The cause of injury is left
to speculation.

*Mr. H. J. Freebourne* and *Mr. T. J. Downey*, for Respond-
ent, submitted a brief; *Mr. Freebourne* argued the cause orally.

After a consideration of all of the evidence submitted
to the jury in this case no reasonable man could come to
any conclusion but that the defendant motorman failed to
exercise ordinary care in keeping a lookout on the track as he
approached the public crossing upon which plaintiff lay un-
conscious.   This is not a case where plaintiff was called upon to
prove defendant motorman actually saw plaintiff in time to stop,
since the facts do not fall within the last clear chance doctrine.
Defendants, however, inject that doctrine into the case, by
their pleadings and evidence, contending that defendant motor-
man actually saw plaintiff on the crossing, but that it was
too late to stop.   We believe that where plaintiff's evidence
shows that defendant motorman said at the time of the acci-
dent and at other times, as shown by the transcript, that
he did not see the plaintiff, before he ran over him, these
facts are sufficient in themselves to warrant going to the jury
on the question of whether or not a proper lookout was main-
tained by the motorman.   We feel that, after considering

the evidence this court will agree with us that a remarkably strong case was made out for the jury after all of the evidence was in. (*Anderson* v. *Missoula Street Ry. Co.*, 54 Mont. 83, 167 Pac. 841; *Lehane* v. *Butte Electric Ry. Co.*, 37 Mont. 564, 97 Pac. 1038; *Cole* v. *Helena Light & Ry. Co.*, 49 Mont. 443, 143 Pac. 974; *Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Priesmeyer* v. *St. Louis Transit Co.*, 102 Mo. App. 518, 77 S. W. 313; *South Covington & C. St. Ry. Co.* v. *McHugh*, 25 Ky. Law Rep. 1112, 77 S. W. 202; *Doichinoff* v. *Chicago etc. Ry. Co.*, 51 Mont. 582, 154 Pac. 924; 36 Cyc. 1507, 1516, 1520, 1601; 22 R. C. L. 984.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendants appealed from a judgment entered in favor of the plaintiff in an action to recover damages for personal injuries.

The Butte Electric Railway Company maintains a double-track system between the city of Butte and Columbia Gardens, over which it operates street-cars propelled by electricity. The cars from the city to the Gardens use the south track, and the cars returning from the Gardens to the city use the north track. Some distance east of the city limits, the tracks pass under a viaduct, and from that point to the East Butte Hotel, a distance of 250 feet, ascend through a deep cut upon a grade which varies from 3.3 to 8.8 per cent. Opposite the hotel building is a station or stopping place where the cars receive and discharge passengers, and immediately west of this station is a public highway which crosses the street-car tracks from north to south. At this crossing and for 48 feet along the tracks are heavy planks between the tracks, between the rails of each track and for a foot on the outside of the outer rail of each track, the upper surface of the planks being level with the top of each rail. The used portion of the highway crossing is confined to the west 12 feet of the

planking, and from the crossing there is an unobstructed view along the tracks in either direction for 3,000 feet or more.

At midnight, October 9, 10, 1923, a street-car operated by defendant Settlemier as motorman left the city of Butte for Columbia Gardens, and when the car passed under the viaduct a signal was given that passengers desired to alight at the East Butte Hotel station. The car then proceeded up the grade at from 8 to 10 miles per hour, and, when it reached the planked crossing, ran over the plaintiff, who was then lying on the track about 6½ feet east of the west end of the planking. An investigation disclosed that the front trucks had run over the plaintiff's left leg and a portion of the thumb and first finger of his left hand, and that his body had been dragged 30 or 35 feet. There was no one but plaintiff in the vicinity of the crossing as the car approached; there were not any street lights near, and the night was cold and very dark. South of the west end of the planking were tumbleweeds from 6 inches to a foot in height, which came down to within 18 inches of the south rail of the south track.

Plaintiff testified that at midnight he left the home of John Baker in East Butte and went directly to the East Butte Hotel station—a distance of two blocks—to board a car for the city; that he crossed to the north side of the tracks and waited for a few minutes, when he saw a car bound for the Gardens approaching from the west; that he concluded to recross the south side of the tracks and ride to the Gardens and back to Butte, rather than wait in the cold for a car going to Butte directly; that in crossing from the north to the south side of the tracks his foot caught in the planking, he fell, struck his head, and was rendered unconscious; that he last saw the approaching car before he fell, when it was ''about 300 yards, maybe more, west of where I was,'' and ''I next saw the car just a few feet from me. At that time I was lying on the track. I started to get up, and the car was just a couple of feet from me, and I stared right at the head-

light, but before I could get up at all, I just started up on my hand, the car struck me, knocked me down and ran over me, and I went unconscious then.''

Several persons, passengers upon the car, testified that immediately after the accident the motorman said that he did not see the plaintiff before the car ran over him. They testified also, that when the car stopped it was east of the east end of the planking.

Plaintiff introduced evidence as to his age, life expectancy, physical condition and earning capacity at the time he was injured, and anticipated the defense by evidence to the effect that he was not intoxicated. Photographs of the crossing, the hotel building and the surroundings generally were admitted in evidence.

Defendant Settlemier testified that the car was equipped with a headlight which illuminated the track for 200 feet immediately in front of the car; that by the application of the emergency brake the car, traveling from 8 to 10 miles per hour up the grade in question, could be stopped within 25 or 30 feet, and not within less than 20 feet; that as he approached the planked crossing he ''just caught a flash of a dark object'' 7 or 8 feet ahead of the car but ''couldn't tell what it was''; that he applied the emergency brake and brought the car to a stop with a sudden jar; that at the time he first saw the object the front end of the car was not more than 2 feet from the west end of the planking; that he could see the tumbleweeds from the viaduct and saw them much more distinctly when he was only 50 feet from them.

D. A. Porter testified that, at the time he served the summons in this case, Settlemier said: ''I didn't know I had run over anything until I felt him under the car.''

We purposely omit any reference to the testimony introduced by the defendants, except such portions of Settlemier's testimony as may tend to aid the plaintiff's case.

At the opening of the trial, counsel for plaintiff disclaimed any purpose to rely upon the doctrine of the last clear chance, and the court narrowed the issues by an instruction "that the only charge of negligence left for the consideration of the jury is the charge that the defendant Russell Settlemier failed to keep a proper lookout as hereinafter defined."

We eliminate from consideration the question of contributory negligence, including the question of plaintiff's intoxication, and for the purposes of this appeal view the evidence in the light most favorable to the plaintiff, assuming that the jury drew from the motorman's testimony every legitimate inference which tends to support the verdict and judgment.

No one of the other witnesses who testified for the plaintiff, assumed to know anything of what occurred outside the car before the injury was inflicted. The testimony of those witnesses is material only so far as it tends to establish the theory advanced by plaintiff: that the motorman did not see him before the car ran over him, and for the purposes of this appeal we assume that it is a proved fact that the motorman did not see the plaintiff at all before the injury was inflicted. From this point forward the case must stand or fall by the testimony given by the plaintiff himself. And again for the purposes of this appeal we assume that his story is true.

The case is not one wherein the maxim *res ipsa loquitur* can [1] be invoked. The fact that plaintiff was injured by a car owned by the railway company and operated by its employee does not raise any presumption of negligence on the part of either defendant (*Reino* v. *Mineral Land Dev. Co.*, 38 Mont. 291, 99 Pac. 853; *Knuckey* v. *Butte Electric Ry. Co.*, 41 Mont. 314, 109 Pac. 979); on the contrary, the presumption is that the motorman discharged his duty. (*Looney* v. *Metropolitan Ry. Co.*, 200 U. S. 480, 50 L. Ed. 564, 26 Sup. Ct. Rep. 303 [see, also, Rose's U. S. Notes].)

There is not any direct evidence that the motorman did [2] not keep a constant and vigilant lookout from the time

the car passed the viaduct until it reached the crossing, but counsel for plaintiff contend that, from the fact that plaintiff's position was not discovered before the injury was inflicted, the jury might infer that he was negligent. If this be conceded, liability would not follow as a necessary or even a permissible consequence. It is elementary that to justify a recovery plaintiff must show that defendants were negligent as charged, and that such negligence was the proximate cause of his injury. Each of these elements is indispensable, and the law imposes upon the plaintiff the burden of proving both of them. The trial court so instructed the jury, and the authorities are all to that effect. (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Barry* v. *Badger,* 54 Mont. 224, 169 Pac. 34; *Glover* v. *Chicago etc. Ry. Co.,* 54 Mont. 446, 171 Pac. 278; *Stones* v. *Chicago etc. Ry. Co.,* 59 Mont. 342, 197 Pac. 252.) In a case of this character the question always is: Was the negligence *causa sine qua non,* a cause which, if it had not existed, the injury would not have occurred? Defendants may be held liable only if to their lapse of duty the injury to plaintiff is attributable directly as any given effect is to be assigned to its efficient cause. (*Kern* v. *Payne,* 65 Mont. 325, 211 Pac. 767; *Hayes* v. *Michigan Central R. Co.,* 111 U. S. 228, 28 L. Ed. 410, 4 Sup. Ct. 369 [see, also, Rose's U. S. Notes].)

To sustain a recovery the evidence relied upon, whether **[3]** direct or indirect, must be substantial—more than a mere scintilla. (*Escallier* v. *Great Northern Ry. Co.,* 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *McIntyre* v. *Northern Pac. Ry. Co.,* 58 Mont. 256, 191 Pac. 1065.) A verdict cannot rest upon conjecture, however shrewd, nor upon suspicion, however well grounded. (*Olsen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *Gleason* v. *Missouri River Power Co.,* 46 Mont. 395, 128 Pac. 586.)

In order to sustain the burden imposed upon him, it was in-
[4] cumbent upon the plaintiff to establish by a preponderance
of the evidence that, by the exercise of ordinary care in keep-
ing a lookout, the motorman could have discovered him lying
on the track in time to stop the car and avoid the injury.
If plaintiff were not on the track or in a place of danger
until the car was so near the crossing that it could not be
stopped before it ran over him, then the failure of the motor-
man to keep a lookout could not have been the proximate
cause of the injury, and in order to show that the motorman's
negligence was the proximate cause, the plaintiff had to dis-
charge the burden of proving that he was in a position of
danger where he could be seen from the approaching car
and that he occupied that position for a sufficient period of
time before the car reached him, to permit the car to be
stopped and the injury averted after the motorman could
have discovered his position of peril by the exercise of rea-
sonable care. This burden the plaintiff did not discharge.

It does not appear at what point upon the crossing plaintiff
caught his foot, whether between the two tracks or at the
south rail of the south track. If he caught his foot between
the south rail of the south track and the plank south of it,
the probabilities are that his body lay beyond the danger
zone. We suggest this merely to emphasize the fact that the
record is silent as to where the plaintiff lay during the inter-
val of unconsciousness. From the fact that only his left leg and
left hand were injured, the fair inference would be that only
those members of his body were upon the rail or in place of
danger at the time the car reached him, but for what period
of time they had been in that position, no one knows. Plain-
tiff testified that when he last saw the car before he fell, it
was 300 yards or more from him and that when he next
saw it, it was only 6 or 8 feet from him and *at that time*
he was lying on the track. He does not tell where he was
lying when he first regained consciousness or how much time
elapsed before he saw the car. In other words, there is not

even a scintilla of evidence that he was on the track, or in a place of danger, or in view of the approaching car, until the car was within 6 or 8 feet of him—too late to avoid the injury. In this condition of the record, counsel for plaintiff say: "Plaintiff must have been lying on the crossing at least from the time the car left the bottom of the grade, 200 feet or more away." But this is mere speculation without any evidence to justify it, and counsel are driven to the necessity of urging, in effect, that from the fact that plaintiff was upon the track when the car approached to within 6 or 8 feet of him, the jury might infer that he was in the same position for a period of time sufficient to enable the motorman to stop the car and avoid the injury after his position could have been discovered by the exercise of ordinary care, and from that inference the jury might infer that the motorman was negligent in failing to keep a proper lookout, otherwise he would have discovered the plaintiff's perilous position in ample time.

Negligence may be established by indirect evidence, but [5] indirect evidence consists only of inferences and presumptions (sec. 10600, Rev. Codes), and one inference cannot be drawn from another inference nor from a presumption (*Kern* v. *Payne*, above; *United States* v. *Ross*, 92 U. S. 281, 23 L. Ed. 707 [see, also, Rose's U. S. Notes]); neither can a presumption rest upon an inference (*Osborne* v. *Supreme Lodge,* 69 Mont. 361, 222 Pac. 456). Section 10601, Revised Codes, declares: "An inference is a deduction which the reason of the jury makes *from the facts proved.*"

In *Cosgrove* v. *Pitman,* 103 Cal. 268, 37 Pac. 232, the court said: "Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer, arbitrarily and without evidence, that there was negligence. When a fact is established, some other fact may be justly inferred therefrom, but when the plaintiff, instead of presenting a fact or facts from which the negligence of

the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established.''

While actionable negligence may be proved by indirect evidence, the rule is settled in this jurisdiction that the [6] circumstances must not only tend to prove the efficient proximate cause relied upon, but must tend equally to exclude any other. (*Winnicott* v. *Orman,* 39 Mont. 339, 102 Pac. 570; *Andree* v. *Anaconda Copper Min. Co.,* 47 Mont. 554, 133 Pac. 1090; *Wallace* v. *Chicago etc. Ry. Co.,* 48 Mont. 427, 138 Pac. 499.) In other words, if the evidence furnishes the basis for two equally permissible conclusions, one of which speaks negligence on the part of the defendant, while the other points to a different efficient proximate cause, the case must fail for want of sufficient evidence. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *De Sandro* v. *Missoula L. & W. Co.,* 48 Mont. 226, 136 Pac. 711; *Fusselman* v. *Yellowstone Valley L. & I. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Scheytt* v. *Gallatin Valley Milling Co.,* 54 Mont. 565, 172 Pac. 321.)

Counsel for defendants invoke this last rule and suggest that plaintiff must have fallen among or east of the tumbleweeds, where his position was concealed from view from the approaching car; that, being aroused from his stupor by the noise of the car, he undertook to arise, and in his efforts his body came into view for the first time, and his left leg and left hand were extended over the rail; hence the injury. We need not stop to determine whether the evidence tends to support this theory, or whether it is equally as reasonable as the one advanced by plaintiff's counsel. It is sufficient to say that the plaintiff's case is wanting in one essential element: Evidence from which the jury could conclude that

the motorman's failure to keep a proper lookout was the proximate cause of the injury.

Since this cause must be remanded for a new trial, attention is directed to instructions 5, 15, 19 and 20 given by the court. Instruction 5 ignores the fact that evidence with respect to a material issue may be in equipoise, and leaves the jury to guess for itself what it should do under such circumstances. Instruction 15 informed the jury "that plaintiff had an equal right with the street-car company to use the crossing." He had the equal right to use the crossing for any proper purpose and in a proper manner, but not for the unqualified right which the instruction mentions. Instruction 19 ignores altogether the defense of contributory negligence relied upon by the defendants, and instruction 20 is so confusing in its terms that it could not enlighten the jury.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES STARK and MATTHEWS and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.