FISHER, RESPONDENT, v. BUTTE ELECTRIC RAILWAY
CO. ET AL., APPELLANTS.

(No. 5,941.)

(Submitted September 17, 1926.  Decided September 29, 1926.)

[249 Pac. 1043.]

*Personal Injuries—Street Railways—Plaintiff Lying on Track
—Negligence of Motorman to Keep · Proper Lookout—Evidence—Sufficiency.*

1.  Evidence in an action against a street railway company for
personal injuries sustained by a pedestrian who, while crossing
defendant's tracks at a highway crossing at night, fell, struck
his head on the rail rendering him temporarily unconscious and
was run over by one of defendant's cars, the action being
brought on the theory that the motorman was negligent in failing to keep a proper lookout but for which he could have
discovered plaintiff lying on the track in time to stop the car and
avoid the injury, *held* sufficient to support the charge of negligence and also that such negligence was the proximate cause of
the injury.

[1]  Carriers, 10 C. J., sec. 1451, p. 1058, n. 37; p. 1059, n. 49;
sec. 1463, p. 1074, n. 24.

*Appeal from District Court, Silver Bow County; W. E.
Carroll, Judge.*

ACTION by Paul Fisher against the Butte Electric Railway
Company and Russell Settlemier.  Judgment for plaintiff,
and defendants appeal.  Affirmed.

*Mr. J. L. Templeman, Mr. Sydney Sanner* and *Mr. Fred. J.
Furman,* for Appellants, submitted a brief; *Mr. Furman* argued the cause orally.

*Mr. T. E. Downey* and *Mr. H. J. Freebourn,* for Respondent,
submitted a brief; *Mr. Freebourn* argued the cause orally.

(See briefs on former appeal, 72 Mont. 594.)'

See 25 R. C. L. 1303.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action for damages for personal injuries sustained by the plaintiff on the night of October 9, 1923, by reason of having been run over by a street-car operated by the defendant company on a highway crossing. This cause was tried once before, and resulted in a verdict and judgment in favor of the plaintiff, from which judgment an appeal was perfected to this court. On the former appeal, by decision therein (72 Mont. 594, 235 Pac. 330) the judgment was reversed and the cause remanded for a new trial. The case was retried before a jury and endeavor made to supply evidence considered necessary, pursuant to the opinion of this court, in order to sustain a verdict. The pleadings and issues remained the same, and in submitting the cause to the jury the errors pointed out in the trial court's instructions on the first trial were corrected. A verdict was returned in plaintiff's favor for the sum of $5,000, upon which judgment was duly rendered, and this appeal is from the judgment. The cause was submitted to the jury solely upon the question of whether the defendants, in the operation of the electric car being run by the defendant company at the time of the accident, failed to keep a proper lookout.

Several errors are assigned, but one of which is necessary to be considered in disposition of this appeal, *viz.:* Is the evidence sufficient to sustain the verdict?

From the admissions of counsel, and an examination of the [1] record, it appears that the evidence submitted on the second trial of this case is essentially the same as that upon the former trial, with the addition only of further testimony to show the defendants' negligence in failing to keep a proper lookout. We do not deem it necessary to restate the facts, as Mr. Justice Holloway made a very clear recital thereof in the previous decision of this case on appeal. We will devote ourselves alone to a consideration of whether the addi-

tional evidence contained in the record now before us is sufficient to support the verdict and judgment.

In the former decision it was said by this court: "In order to sustain the burden imposed upon him, it was incumbent upon the plaintiff to establish by a preponderance of the evidence that, by the exercise of ordinary care in keeping a lookout, the motorman could have discovered him (the plaintiff) lying on the track in time to stop the car and avoid the injury. If plaintiff were not on the track or in a place of danger until the car was so near the crossing that it could not be stopped before it ran over him, then the failure of the motorman to keep a lookout could not have been the proximate cause of the injury, and in order to show that the motorman's negligence was the proximate cause, the plaintiff had to discharge the burden of proving that he was in a position of danger where he could be seen from the approaching car and that he occupied that position for a sufficient period of time before the car reached him, to permit the car to be stopped and the injury averted after the motorman could have discovered his position of peril by the exercise of reasonable care. This burden the plaintiff did not discharge. It does not appear at what point upon the crossing plaintiff caught his foot, whether between the two tracks or at the south rail of the south track. If he caught his foot between the south rail of the south track and the plank south of it, the probabilities are that his body lay beyond the danger zone. We suggest this merely to emphasize the fact that the record is silent as to where the plaintiff lay during the interval of unconsciousness. From the fact that only his left leg and left hand were injured, the fair inference would be that only those members of his body were upon the rail or in a place of danger at the time the car reached him, but for what period of time they had been in that position, no one knows. Plaintiff testified that when he last saw the car before he fell, it was 300 yards or more from him and that when he next saw it, it was only

6 or 8 feet from him and *at that time* he was lying on the track. He does not tell where he was lying when he first regained consciousness or how much time elapsed before he saw the car. In other words, there is not even a scintilla of evidence that he was on the track, or in a place of danger, or in view of the approaching car, until the car was within 6 or 8 feet of him—too late to avoid the injury. In this condition of the record, counsel for plaintiff say: 'Plaintiff must have been lying on the crossing at least from the time the car left the bottom of the grade, 200 feet or more away.' But this is mere speculation without any evidence to justify it, and counsel are driven to the necessity of urging, in effect, that from the fact that plaintiff was upon the track when the car approached to within 6 or 8 feet of him, the jury might infer that he was in the same position for a period of time sufficient to enable the motorman to stop the car and avoid the injury after his position could have been discovered by the exercise of ordinary care, and from that inference the jury might infer that the motorman was negligent in failing to keep a proper lookout, otherwise he would have discovered the plaintiff's perilous position in ample time.''

In order to meet this objection on the second trial, the plaintiff as a witness in his own behalf stated in effect that the last time he saw the car as he started to cross the track it was about 300 yards west; that he was walking on the highway where it crosses the track, about eight feet from the west end of the planking; that as he got into the center of the track midway between the north and south rail of the south track he caught the heel of his left shoe in an aperture in the planking. The planks were laid parallel with the rails, but there were spaces between them, and that he caught his left heel in one of such openings about midway between the rails of the south track, which threw him to the ground and caused him to fall on the right side of his head, rendering him unconscious, his left hand being on the south rail and his right hand outside

of the south rail.  He says that when he recovered, his heel was still caught in the planking, that he was in the same position as when he fell, and that the street-car was nearly on top of him, being then only six or eight feet away.  He started to raise up, turning his face towards the car and was struck and dragged along the track for a distance of about thirty feet.  He was taken from under the car about the center thereof, his body being under the car from his waist down.  From such testimony, it appears that he fell on the track and remained there until struck by the approaching car.

It should be remembered that the accident occurred on the outskirts of the city of Butte on the street-car track of the defendant company at midnight, October 9–10, 1923, it being at the time very dark; furthermore, that the plaintiff disclaimed purpose to rely upon the doctrine of the last clear chance, and that the issues were narrowed to the question of whether the motorman failed to keep a proper lookout.

The motorman as a witness for the plaintiff testified: "I passed under the viaduct with the street-car on the night of the 9th of October, 1923, on the last trip.  Going up that grade I was on the south track.  I judge my car was traveling around nine or ten miles an hour.  At that speed on that grade, I stopped the car in about 25 or 30 feet.  As I went up the grade I had a very good headlight.  The light was thrown in front of the car around 200 feet.  As I went up the grade, when I was 150 feet from the planking the light was shining on the planking of the crossing.  I was looking towards the crossing.  As I got 100 feet from the west end of the planking my light was shining on the planking.  I was looking towards the crossing and planking.  When I was 50 feet from the planking my light was shining brightly upon the crossing; I was looking towards the crossing.  The surface of the planking is just about level with the top of the rails."  And as a witness for the defendants he stated: "When I was going up the grade I was running the car, looking out ahead.  As to

what if anything I saw on that trip before I stopped my car in the vicinity of the East Butte Hotel after I left the viaduct,— I just got a flash of a dark object, a long dark object, at the right hand side of the south rail. When I first got the flash I was about seven or eight feet from that object. I then put on my brakes; the result of putting on my brake was the car stopped quick, with a quick jerk. I used the emergency air brake to stop my car. I kept a good lookout as I went up the grade east of the Northern Pacific viaduct. I first learned what the long dark object that I saw south of the south rail was when I got out of the car. It was Mr. Fisher.'' Several witnesses for the plaintiff testified that at the time of the accident the motorman said he did not see the man on the track.

What is said in our former opinion should suffice as to the law governing the case, and with the additional evidence above adverted to, we cannot do otherwise than affirm the judgment. It must be held that the motorman, by the exercise of reasonable care, could have avoided the accident, since the jury, by its verdict, determined that the plaintiff's body lay upon the tracks in plain view as the car ascended the grade. The evidence supported the charge of negligence and also that such negligence was the proximate cause of the injuries sustained by the plaintiff. Under the circumstances made to appear, it was for the jury to decide whether the motorman kept a proper lookout. (*Riley* v. *Northern Pacific Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Flaherty* v. *Butte Electric Ry. Co.*, 43 Mont. 141, 115 Pac. 40.)

In the exercise of ordinary care the motorman was required to keep a lookout ahead, more especially in approaching the highway crossing, and under the evidence in this case it was the jury's province to say whether by the observance of such care the motorman should have seen the body of the plaintiff on the track in time to have avoided the accident. The jury

have by their verdict resolved the question; and finding no error committed in the trial the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES STARK and MATTHEWS and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.