120

BURGES FRANCIS WILSON, Plaintiff and Respondent, v.
R. H. WININGER, Defendant and Appellant.
No. 9898.
Submitted October 23, 1959. Decided October 27, 1959.
345 Pac. (2d) 374.

See **C. J. S.** Master and Servant, § 160(11).

Marchi, Vance and Leaphart, Helena, for appellant. Mr.
Leaphart argued orally.

John W. Bonner, Helena, for respondent. Mr. Bonner argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal by defendant from a judgment entered in ██ █ the district court of Lewis and Clark County following a jury trial. Since appellant contends that the verdict of the jury is not supported by the evidence we will briefly outline the fact situation.

Plaintiff, a resident of Texas, was employed by one W. M. Scherer to "watch a well" being drilled near Dillon, Montana, in the month of May 1955. Upon arriving in Dillon he met defendant. The well was being drilled by the R. & W. Drilling Company, a corporation, of which the defendant was president; he appears to have been in personal charge of the operation at Dillon. Plaintiff worked for Scherer for a period of ten days and about that time Scherer defaulted in his contract with the R. & W. Drilling Company and plaintiff testified that on or about May 25th defendant told him he had taken over the leases of Scherer and defendant then personally employed plaintiff at the same salary he had been previously employed at by Scherer, being $40 per drilling day and $25 per stand-by day.

Plaintiff further testified that he worked for the defendant for 41 full drilling days and 28 stand-by days, or a total of $2,750 at the agreed salary. Plaintiff further testified that he had his equipment for running oil and gas analyses on the samples taken from the well set up in the Andrus Hotel at Dillon, and that he did such work during evenings or when he was not otherwise employed.

Plaintiff stated that he was not paid by Scherer for the work he did for him and was likewise not paid by the defendant, so he went to work on the rig as a derrickman for the R. & W. Drilling Company and worked a day shift. He further testified that his employment by defendant as a geologist was entirely personal and had nothing whatever to do with the Drilling Company.

Plaintiff further testified that on completion of the arrangement for employment by Wininger he moved his family from Texas to Dillon. Along about the middle of August 1955, drilling ceased on the Dillon well and the R. & W. Drilling Company moved to Townsend, Montana, where another well was drilled. Plaintiff went along as a derrickman but did no geological work on the Townsend well. Following completion of the well at Townsend, plaintiff demanded payment for his services for "watching the well" at Dillon for Wininger but he did not receive any payment and shortly thereafter he commenced this suit. Plaintiff's counsel testified that he talked with the defendant on the phone about the money owed plaintiff and asked defendant what he wanted to do about payment, and defendant responded that he owed money and would come to the office and make arrangements. This conversation is denied by the defendant, but defendant did admit he had been called on the phone by another Helena attorney.

Defendant testified that by reason of the default of Scherer he discussed with Scherer the possibility of taking over his leases, but that such proposition was never consummated or completed, and that he tried for several weeks to make a deal but never succeeded.

Defendant's version of the arrangement between himself and plaintiff is that he understood the arrangement between Scherer and plaintiff and plaintiff's brother-in-law, who apparently operated together as Trans-Pecos Engineering Company, and that such arrangement was that the Engineering Company was to get its expenses and an interest in some leases near the well; that he agreed with the Engineering Company at the time of Scherer's default that he would employ plaintiff as a derrickman and give them three 80-acre tracts on the assignment of the leases to the R. & W. Drilling Company, but that he would not pay them $50 per day.

John Marchi, an attorney, testified that defendant came to see him in July of 1955 for the purpose of finding out what he could do by way of collecting the money Scherer owed him.

Marchi further testified that he had knowledge of the arrangement or agreement entered into between R. & W. Drilling Company and the Trans-Pecos Engineering Company during the month of May 1955, and he stated that in the latter part of May 1955 it became apparent to Wininger as president of the R. & W. Drilling Company that Scherer was a "phoney" oil promoter and that Wininger and the R. & W. Drilling Company were not going to be paid because Scherer did not have the cash to drill the well; that in an attempt to salvage what Wininger could, he having already incurred $10,000 expenses in moving, he discussed with Scherer the proposition of taking over all of Scherer's leases; that they discussed the possibility of Scherer assigning all of them to the R. & W. Drilling Company, but that such deal was never completed. He further testified that Wininger and plaintiff discussed an arrangement whereby if the R. & W. Drilling Company took over the leases, then would Trans-Pecos continue to take samples and analyses on the well; that Wininger said he would continue the same arrangement with Trans-Pecos Engineering Company that Scherer had, except that he would not pay them $50 a day, but he would employ plaintiff as a derrickman so he would have expense money and he would give them three 80-acre tracts. This agreement was conditioned that Scherer would assign the leases to R. & W. Drilling Company, but was never completed.

In his complaint plaintiff alleged that he was a qualified geologist and that his employment by defendant was as a geologist. Admittedly plaintiff had no college degree as such but he testified to practical experience commencing in 1945 as a trainee in oil and gas analysis, following six months of such training he spent the next ten years in the field, having been on his own for three years previous to his arrival in Dillon. Defendant's proof was directed to showing that actually plaintiff was doing "logging trailer" work and not geology. Plaintiff stated logging work is principally the same as geology work, other than in logging they run gas analyses on the cutting which a lot of field geologists do not do.

A qualified geologist called by defendant stated in his opinion that what plaintiff operated was a logging unit and not a geology outfit. He admitted that there are some geologists who are not college graduates but who have gained their knowledge from experience.

Defendant's proof also indicated that the only person who would have need for the services of either a geologist or a logging outfit would be the operator or owner of the leases, and that a drilling contractor would have no interest whatever in the geology of the well.

The jury heard the witnesses and found for plaintiff. There is considerable conflict in the testimony, but there is substantial evidence which, if believed, sustains the verdict of the jury. We have often stated that a verdict based on substantial but conflicting evidence will not be disturbed on appeal.

"In Carey v. Guest, 78 Mont. 415, 424, 258 Pac. 236, 238, this court said: 'The judgment is based on the verdict of the jury. A judgment will not be disturbed when there is substantial evidence to support it. Tuttle v. Pacific Mutual Life Ins. Co., 58 Mont. 121, 190 Pac. 993, 16 A.L.R. 601. When there is a substantial conflict in the evidence the Supreme Court, on appeal, will not reverse the judgment on the ground of insufficiency of the evidence. Sanborn Co. v. Powers, 58 Mont. 214, 190 Pac. 990.' See also, Robinson v. F. W. Woolworth Co., 80 Mont. 431, 447, 261 Pac. 253; Chancellor v. Hines Motor Supply Co., 104 Mont. 603, 612, 69 Pac. (2d) 764; Reynolds v. Trbovich, Inc., 123 Mont. 224, 226, 210 Pac. (2d) 634." Holden v. Varner, 128 Mont. 211, 272 Pac. (2d) 1008, 1011.

Appellant contends that Instruction No. 8, given without objection, was tantamount to directing a verdict in favor of defendant, and that the jury disregarded the instruction and that their verdict should be set aside.

Instruction No. 8 reads:

"The Court instructs the jury that should they find that the plaintiff was hired by the defendant in some other capacity than as a geologist and should the jury find that the plaintiff

was paid for that work so performed, then the jury should hold for the defendant.''

The evidence clearly shows that plaintiff was hired by R. & W. Drilling Company, a corporation, as a derrickman and paid by them for his services as such. Defendant made no contention that he personally hired plaintiff in any capacity, in fact testified he never hired him at all. This was a conflict resolved by the jury against defendant and we fail to see how it can be contended the jury disregarded this instruction.

As to the instruction dealing with credibility of witnesses, the jury were properly instructed and while defendant complains that to believe plaintiff's testimony the jury ignored such instruction, we fail to follow such reasoning and what we have herein said with regard to conflicting testimony disposes of any such contention.

Appellant contends further that the trial court erred in denying his motion for a new trial. Upon review of the motion and affidavits we find no error and hold that the motion was properly denied.

The final error charged is that of including a $300 attorney's fee in the judgment. This being an action for wages an attorney's fee may be allowed as provided in section 41-1306, R.C.M. 1947. This statute provides that such fee is ''to be taxed as part of the costs in the case.''

The jury verdict was received on June 7, 1957, and on June 10, a judgment dated June 7 was filed with the clerk, which judgment included an attorney's fee in the amount of $300 and costs of $37.

On June 14 defendant moved to strike the memorandum of costs upon the ground it had not been filed within the time provided by section 93-8619, R.C.M. 1947. On the same day, June 14, defendant moved to set aside and vacate the judgment upon the ground that it included the $300 attorney's fee.

On July 3, the motion to strike the memorandum of costs was granted but the motion to set aside and vacate the judgment was denied.

The memorandum of costs is not included in the record before us but it is apparent from the plain wording of the statute that an attorney's fee must be taxed as part of the costs, and to be allowed of necessity would have to be included in the memorandum. Since the motion to strike was granted all items of costs would fail, which would include the attorney's fee.

The judgment should be corrected by striking therefrom the item of attorney's fee and the other costs, and as so modified the judgment is affirmed.

MR. JUSTICES BOTTOMLY, ANGSTMAN, CASTLES and ADAIR concur.