No. 12730

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

LELAND J. FRANK,

                    Plaintiff and Respondent,

-vs-

BURLINGTON NORTHERN, INC.,

                    Defendant and Appellant.

---

Appeal from:   District Court of the Thirteenth Judicial District,
               Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        Crowley, Kilbourne, Haughey, Hanson & Gallagher,
        Billings, Montana
        Jack Ramirez argued, Billings, Montana

    For Respondent:

        Michael J. Whalen argued, Billings, Montana

---

Submitted:  May 8, 1975
Decided: JUL 18 1975

Filed: JUL 18 1975

_Thomas J. Kearney_
                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff Leland J. Frank entered in the district court, Yellowstone County, on a jury verdict in the amount of $20,000. Plaintiff brought the action to recover damages for personal injuries and property damage sustained when he drove his 1964 pickup truck into the side of the 24th car of a freight train. Plaintiff alleged negligence on the part of the railroad and the railroad raised the defense of contributory negligence.

At the close of plaintiff's case, and at the close of all evidence, defendant moved for a directed verdict on the grounds that: (a) as a matter of law negligence had not been proven, and (b) as a matter of law plaintiff was contributorily negligent. Motions for a new trial and judgment notwithstanding the verdict, were denied.

The accident occurred at a railroad crossing on Railroad Street in the city of Laurel, Montana. It occurred on a bitterly cold early morning of December 9, 1972, sometime between 12:30 and 2:00 a.m. Railroad Street runs east and west, while the railroad track intersects at a northeast-southwest angle. The train was moving northerly; the plaintiff's vehicle northeasterly.

Railroad Street in the vicinity of the crossing has a slight, gradual incline starting approximately 400 feet west of the crossing. The speed limit is 25 miles per hour. The street at that time was covered with packed snow and ice. The fields on either side of the street were also snow covered.

In the last 600 feet west of the crossing, two street lights are located along the north side of Railroad Street. A mercury vapor light is located at the east end of Railroad Street. Another street light is located on a telephone pole approximately ten to fifteen feet from the northeast corner of the crossing. That

- 2 -

light was high enough to be visible to a motorist. It was lighted the night of the accident.

As to obstructions, plaintiff testified there were so many obstacles that he could not see the train until he got right to it. However, this testimony is totally refuted by evidence and the exhibits

On the afternoon preceding the accident plaintiff had driven to Billings with his brother-in-law; he testified he spent two hours in Tiny's Tavern and had two glasses of beer. He returned to his farm near Park City at about 6:00 p.m. He left his farm at about 7:30 p.m. and went to his father-in-law's tavern where he stayed until 11:30 p.m.; during which time he admitted drinking seven glasses of beer. He then returned to the home of his brother-in-law in Laurel, where he remained for a period of time before leaving to drive to the Owl Cafe.

Plaintiff turned onto Railroad Street from Yellowstone Avenue about 600 feet west of the crossing and proceeded towards the crossing at 15 to 25 miles per hour with his headlights on low beam. He did not observe the train crossing in front of him until he was 30 feet from it. He applied his brakes, but hit a yellow freight car which was the 24th car from the front of the train. After the accident, plaintiff walked to the home of his brother-in-law and reported it to the police at 2:00 a.m.

The Railroad appeals and sets forth four issues, but only one combined issue is necessary for disposition of the case. That issue is--- Was there any credible evidence to sustain the verdict that defendant was negligent and whether, in any event, plaintiff was contributorily negligent as a matter of law?

This Court has consistently held that ordinarily a train moving over a crossing is effective and adequate warning of its presence, in and of itself, without additional warning signals. Jarvella v. Northern Pacific Ry. Co., 101 Mont. 102, 113, 53 P.2d 446; Incret v. Chicago, M.St.P. & P.R.Co., 107 Mont. 394, 86 P.2d 12;

Broberg v. Nor.Pac.Ry.Co., 120 Mont. 280, 289, 182 P.2d 851;

. Dimich v. Northern Pac. Ry., 136 Mont. 485, 348 P.2d 786; Hernandez v. C.B. & Q. RR.Co., 144 Mont. 585, 398 P.2d 953.

In Montana the only exception to the general rule recognized by these cases is that at a crossing where, because of peculiar and unusual facts and circumstances and owing to some peculiar environment rendering the situation unusually hazardous, the railroad company may be negligent in failing to provide additional safeguards or warnings other than the presence of the train standing on or passing over the crossing.

In Broberg the Court described the exception in this language:

> "While it is the general rule that it is not
> negligence on the part of a railway company
> in failing to blow the locomotive whistle, ring
> the bell, or to place warning lights along the
> train where it has stopped on an ordinary crossing
> or where it is slowly moving thereover, or to
> provide a flagman to warn the traffic, such failure
> may, under peculiar facts and circumstances or under
> peculiar environments rendering the situation unusually
> hazardous, render the company liable for negligence. * * *
>
> "* * *
>
> "The question as to whether or not the crossing
> involved in this action was extrahazardous resolves
> itself, under the rule approved by this court in
> the Jarvella case to this:  Were there present for
> the determination of the jury any peculiar or unusual
> facts and circumstances or any peculiar environment
> rendering the situation unusually hazardous."

Here, the question is really whether there was any substantial credible evidence of any peculiar environment rendering the situation unusually hazardous.

In Graham v. Rolandson, 150 Mont. 270, 283, 435 P.2d 263, this Court explained substantial credible evidence in this language:

> "Substantial credible evidence sufficient
> to warrant submission of the issue of contributory
> negligence to the jury is governed by the same
> rules that are used in determining the sufficiency
> of the evidence to support a verdict on that issue.
> Substantial credible evidence in that regard simply
> means such evidence as will convince reasonable men

and on which such men may not reasonably differ as to whether it establishes the verdict on that issue; if all reasonable men must conclude that the evidence does not establish the verdict on that issue, then it is not substantial evidence.
     . [Citing cases] <u>A corollary of this rule is that whenever the surrounding circumstances make the story of a witness highly improbable or incredible, or whenever the testimony is inherently impossible, such evidence is not substantial and reversal should occur.</u> [Citing cases]." (Emphasis supplied).

As indicated in <u>Graham</u>, whenever the surrounding circumstances make the story of witnesses highly improbable or incredible, or whenever their testimony is inherently impossible, such evidence is not "substantial". The leading case supporting this principle is Casey v. Northern Pacific Ry. Co., 60 Mont. 56, 66-69, 198 P. 141, followed and cited in numerous decisions of this Court. Its language is particularly appropriate here:

"Counsel for plaintiff insist that the evidence is conflicting, and, since the jury found upon the issues and the lower court denied a new trial, this court is without authority to interfere, but the principal conflicts arise upon the plaintiff's own testimony, rather than in the testimony of opposing witnesses. Of the testimony of the witnesses for defendant it is sufficient to say that it is harmonious, and reasonable and consistent with physical facts, but the jury disregarded it altogether and must have based the verdict solely upon the surmises, the guesses and estimates of the plaintiff.

"* * *

"It is the general rule that an order denying a new trial upon the ground that the evidence is insufficient to sustain the verdict will not be reversed where the evidence is conflicting, if there is some evidence to support the verdict; but the rule has its foundation in the assumption that the conflict is real and the supporting evidence is substantial.

"In Driscoll v. Market Street Cable Ry. Co., 97 Cal. 553, 33 Am.St.Rep.203, 32 Pac. 591, the supreme court of California said: 'When a jury catches at a semblance or pretense of evidence for the purpose of somewhat equalizing financial conditions by taking money away from one party and giving it to the other without legal cause, the trial judge should, without hesitation, set the verdict aside; and in the event of his not doing so, this court will grant a new trial.'

"Primarily, it is the province of the jury to pass upon the credibility of the witnesses and the weight to be given to their testimony, but the determination of the

- 5 -

jury is not conclusive. Insufficiency of the evidence is a statutory ground for a motion for a new trial * * * and in passing upon the motion it is the duty of the trial court to weigh the evidence, and, if it is not sufficient to sustain the verdict, a new trial should be ordered (Mullen v. City of Butte, 37 Mont. 183, 95 Pac. 597), and, if it is not, the appellate court must then determine whether there is substantial evidence to warrant the verdict and will not abdicate its authority in favor of the jury's findings. Jurors are subject to the ordinary infirmities of human nature, and cases are sometimes presented wherein justice would be denied if the courts failed to interfere.

"We are not unmindful of the advantageous position occupied by the jury and the lower court in having the witnesses before them, in hearing them testify, and observing their demeanor; but, though the appearance of a witness is an aid in judging his credibility, it is not an infallible one. Dissimulation is often difficult to detect, and falsehood is often clothed in the garb of truth. Whenever the surrounding circumstances make the story of a witness highly improbable or incredible, or whenever the testimony is inherently impossible, a new trial should be ordered. Physical conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them. * * *

"The corollary of the first rule above is stated cogently in McAllister v. McDonald, 40 Mont. 375, 106 Pac. 882. It was there held that the supreme court is not authorized to affirm an order denying a new trial: (a) Where the evidence tending to support the verdict is an isolated statement of a witness which is in conflict with his other statements; or (b) when the verdict is contrary to the great weight of the evidence, and the evidence which tends to sustain the verdict is impeached or rendered improbable by conceded facts, or is against all reasonable inferences or probabilities of the case; or (c) when the verdict, though supported by some evidence, is so utterly at variance with the real and unexplained facts that the court can say that it is clearly wrong.

"The rule has been stated repeatedly in this jurisdiction that a court may reject the most positive testimony, though the witness be not discredited by direct evidence impeaching him or contradicting his statements. The inherent improbability of his story may deny all claims to respect. * * * The credulity of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears. 'It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude its judgment.' [Citations omitted].

" * * *

"In his testimony given upon the trial of this case the plaintiff contradicted himself repeatedly; contradicted the allegations of his verified complaint; was contradicted by his previous statements, by the physical facts, by every one of defendant's witnesses, and by his own witness, Marchington. Some of his declarations are too transparent to be entitled to credence, are improbable upon any supposition short of actual mental imbecility.

"* * *

"Plaintiff contented himself with giving estimates and demonstrated that he was without capacity for judging distances, or deliberately colored his testimony to meet the supposed exigencies of his case." (Emphasis supplied.)

The most recent case concerning the subject of extrahazardous crossings is Hernandez v. C.B.& Q. RR.Co., 144 Mont. 585, 398 P.2d 953. That case is controlling here. In Hernandez the Court impliedly criticized its previous decisions in Broberg and Dimich, indicating that some of the factors considered in those cases would not necessarily be considered again in determining whether an extrahazardous crossing existed. In Hernandez, the plaintiff's decedent was a passenger in an automobile which struck the side of a moving freight train at a railroad crossing near Hardin. The crossing was a spur line which was used seasonally during the sugar beet harvest. The train was made up of thirty dark colored, rust-red cars; the automobile struck the 27th car of the train. The accident occurred on an "unusually dark" night. The train was moving about ten miles per hour, at the time of the accident and the driver of decedent's car observed the train at a distance of about 200 yards but was unable to stop. At the conclusion of evidence, the district court granted defendant's motion for dismissal and this Court affirmed.

In Hernandez, the speed limit for traffic approaching the crossing was 55 miles per hour. Here, the speed limit was 25 miles per hour. The distances required for unobstructed view of the tracks can be reduced accordingly. Photographs show, without question, that the view of the crossbuck, the crossing,

and the track, was completely unobstructed for the last several hundred feet for eastbound traffic approaching the crossing. In addition, Railroad Street is practically level, and the slight incline starts approximately 400 feet west of the crossing. Once plaintiff's vehicle was within 400 feet of the crossing, his vehicle was on the incline and his lights would show along the incline in the same manner as if the street was perfectly level. Furthermore, there is even more reason in this case than in Hernandez for a finding as a matter of law that an extrahazardous crossing did not exist. In Hernandez, the surface of the road was blacktop and the plaintiff struck a dark, rust colored beet car. In addition, there was not a street light at the crossing in Hernandez, as in the instant case.

Thus, there was not substantial credible evidence to support the jury verdict.

Additionally, here the plaintiff was contributorily negligent as a matter of law. He did not observe the train until he was 30 feet away, although he testified his lights were in good condition. He did not observe the crossbuck, although his view was completely unobstructed. He clearly failed to keep a proper lookout. The condition of the street, the time of day, and other factors show clearly that plaintiff was not driving in a prudent manner. He was cited for driving too fast for existing conditions. Although he denied having entered a guilty plea to that charge, the records reveal that a plea of guilty was made. But, even without that, the facts reveal plaintiff guilty of contributory negligence as a matter of law. Monforton v. Northern Pacific Ry., 138 Mont. 191, 355 P.2d 501.

The judgment of the district court is reversed and the cause dismissed.

_____
Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____

_____
Justices.